**JOHN A. SHEPARDSON, SBN 129081**
125 E. Sunnyoaks Ave., No. 104
Campbell, CA 95008
T: (408) 395-3701
F: (408) 395-0112
E John@shepardsonlaw.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO COURTHOUSE

| | |
|---|---|
| MAISA KURDI, | ) CASE NO. |
| | ) |
| Plaintiff, | ) **REQUEST FOR JURY TRIAL** |
| | ) |
| v. | ) **1. LC 1102.5 (RETALIATION)** |
| | ) |
| CALIFORNIA DEPARTMENT OF | ) **2. LC 98.6 (RETALIATION)** |
| TRANSPORTATION, and Does 1-100, | ) |
| | ) **3. LC 6310 (RETALIATION)** |
| Defendants. | ) |
| | ) **4. DFEH (RETALIATION)** |
| | ) |
| | ) **5. DFEH (RETALIATIOIN)** |
| | ) |
| | ) **6. EEOC (RETALIATION)** |
| | ) |
| | ) **7. DFEH (HARASSMENT )** |
| | ) |
| | ) **8.  DFEH (DISCRIMINATION)** |
| | ) |
| | ) **9. DFEH (DISCRIMINATION)** |
| | ) |
| | ) **10. EEOC (DISCRIMINATION)** |
| | ) |
| | ) **11. EEOC (DISCRIMINATION)** |
| | ) |
| | ) **12. EEOC (DISCRIMINATION)** |
| | ) |
| | ) **13. BREACH MANDATORY DUTIES** |
| | ) |

1

|   |   |
|---|---|
| 1 | )      **14. NEGLIGENC PER SE** |
| 2 | )      **15. IIED** |
| 3 | )      **16. DFEH (DISCRIMATION)** |
| 4 | )      **17. LC 204 (LATE PAY)** |
| 5 | )      **18. DFEH (NONACCOMMODATE)** |
| 6 | ) |
| 7 | /      **19. DFEH (BAD FAITH)** |

## I. KEY LEGAL PRINCIPLES

1. Pertinent portion of Labor Code § 1120.5:

> (b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

2. Pertinent portion of Government Code § 12940 regarding retaliation:

> (h)  For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

3. Pertinent portion of Government Code § 12923:

> (a) The purpose of these laws is to provide all Californians with an equal opportunity to succeed in the workplace and should be applied accordingly by the courts. The Legislature hereby declares that *harassment creates a hostile, offensive, oppressive, or intimidating* work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being. (emphasis added)

2

(b) *A single incident of harassing conduct* is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an *intimidating, hostile, or offensive* working environment. In that regard, the Legislature hereby declares its rejection of the United States Court of Appeals for the 9th Circuit's opinion in Brooks v. City of San Mateo (2000) 229 F.3d 917 and states that the opinion shall not be used in determining what kind of conduct is sufficiently severe or pervasive to constitute a violation of the California Fair Employment and Housing Act. (emphases added)

4. 2 CCR § 11023(a) Employers have an affirmative duty to take reasonable steps to prevent and promptly correct discriminatory and harassing conduct. (Gov. Code, § 12940(k).)

5. 2 CCR § 11023(b) Employers have an affirmative duty to create a workplace environment that is free from employment practices prohibited by the Act.

6. 2 CCR § 11034(f) Sexual Harassment. Sexual harassment is unlawful as defined in section 11019(b), and includes verbal, physical, and visual harassment, as well as unwanted sexual advances. An employer may be liable for sexual harassment even when the harassing conduct was not motivated by sexual desire. A person alleging sexual harassment is not required to sustain a loss of tangible job benefits in order to establish harassment. Sexually harassing conduct may be either "quid pro quo" or "hostile work environment" sexual harassment:

## II. JURISDICTION AND VENUE

7. The amount in controversy well exceeds any applicable jurisdictional minimum and involves multiple federal causes of action.

8. The misconduct of Caltrans' employees occurs in its District 6 facilities in Bakersfield, Fresno, Kern and Sacramento Counties, State of California.

## III. THE PARTIES

### A.   PLAINTIFF

9. Plaintiff Maisa Kurdi ("Maisa") was and is an employee of Defendant California Department of Transportation ("Defendant" or "CalTrans").

### B.   DEFENDANTS

10. Defendant Caltrans is the second largest California State Agency, and is responsible for designing and maintaining the public roads and bridges in the State of California.

### C.   DOE DEFENDANTS

11. Maisa is unaware of Doe defendants that are responsible for the wrongdoing alleged herein, and when ascertained they may be joined in this action.

### D.   AGENCY

12. At all times relevant to this Complaint, Defendants, and each of them, were acting as the agents, employees, and/or representatives of each other, and were acting within the course and scope of their agency and employment with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint.  NV5 and its employees and/or representatives were subject to the direction and control of Defendant Caltrans.

### E.   AIDING AND ABETTING AND CONSPIRACY

13. Maisa alleges on information and belief that CalTrans and NV5 and their respective representatives and/or employees aided and abetting each other and engaged in a conspiracy to harass and retaliate Maisa.

### F. GENERAL ALLEGATIONS

14. Maisa holds a civil engineering degree from Fresno State University.

15. Maisa is hired by Defendant on August 1, 2018 as a transportation engineer, assistant resident engineer.

4

Complaint-47

Kurdi v. Caltrans

16.  At time of hiring she is promised a minimum of $5,000/month salary and that her actual salary is to be determined later.

17.  She is assigned to work in Bakersfield, CA, in District 6 under the supervision of Senior Transportation Engineer Michael Garrett.

18.  **Quality Assurance.**  She is assigned to perform quality assurance oversight on construction projects.

19.  She has a reputation for "going by the book" and insistence on compliance with the rules, which is discouraged by some management personnel and co-workers.

20.  Maisa is an Arabic Muslim and notices that CalTrans places white nonminorities persons in one work group and minorities in another group.

21.  CalTrans' policy is to give advance notice to work the night shift.

22.  Approximately two months after being hired, Maisa is contacted over the weekend by Construction and Project Resident Engineer Clay Lomax and told to start working nights.

23.  She has not received proper training for the night work.

24.  She does not have access to CalTrans' parking lot.

25.  Maisa works the night shift on Sunday and then into midweek.

26.  CalTrans' policy is to work the night shift the entire week.

27.  CalTrans doesn't follow its own policy and asks Maisa to work the Wednesday morning shift.

28.  She is told there was no night work when there actually is work and allowed to a male co-worker.

29.  Defendant's Transportation Engineering Technician Paul Shaw (picture below) tells Maisa to go to a work site on Highway 58 in Bakersfield for training.

30.  He leaves to go to the site before her.

5

31. He then texts stating he is going home to get his sunglasses.

32. Maisa stays in the office.

33. He texts back saying he is going to the field site.

34. Maisa goes to the site.

35. **Harrassment/Discrimination.** Maisa arrives and Mr. Shaw and Transportation Engineering Technician Samuel Felix, see her, waive and then leave.

36. Maisa is confused regarding why the workers left because she thinks they were going to provide training.

37. They text her and tell her to watch the carpenters.

38. She responds that she has work to do back in the office.

39. While leaving the site, Maisa trips, falls and is injured.

40. **Witness to Bullying.** On October 26, 2018, Mr. Joey Corel of NV5, a consulting company that does quality control and testing for CalTrans texts Maisa at 10:12 a.m. about his witnessing Messrs. Shaw and Felix bullying her.

41. **NV5.** From https://www.nv5.com/projects/caltrans-on-call-district-6/



6

# CALTRANS ON-CALL, DISTRICT 6

NV5 is providing the full suite of management and inspection services for highway widening, new highway alignment, roadway surfacing, and drainage basins in Caltrans' Central Region (District 6) through discrete task orders. NV5 assistant resident engineers are responsible for the preparation of correspondence, coordinating and chairing meetings with contractors, making field determinations, providing recommendations for change orders, the review of potential claims, and the preparation of responses and reports. Additionally, our inspectors are responsible for the inspection of all day-to-day activities, including monitoring public safety and convenience.

*As many of the task orders have required nighttime work, heightened safety procedures to protect both workers and the traveling public has been central to our approach to management.*

Recent projects include: Highway 99 — $21 million widening of freeway from six to eight lanes and placement of Portland cement concrete (PCC) and hot-mix asphalt (HMA); Highway 99 — $80 million replacement of existing roadway pavement with concrete pavement; Highway 223 — $3.7 million widening of outside shoulder and building of a rumble strip; Highway 5 — $11 million replacement of existing concrete and development of concrete shoulder; State Route 46 — $47 million widening of the existing road to four lanes; Highway 119 — $3.2 million shoulder widening and HMA overlay; and Highway 5 — $28 million replacement of concrete panel and rebuilding of the lane and shoulder.

The NV5 team has worked on dozens of projects in the Kern County service area with up to 10 individuals assigned to various task orders. Working as integrated teams with Caltrans' resident engineers and inspectors, these tasks required extensive coordination with Caltrans, the California Highway Patrol, and local jurisdictions.

42. Supervisor Garrett calls her and says that Mr. Shaw told him that she refused to go into the field.

43. She tells Supervisor Garrett the truth about what happened and asks that he investigate the matter.

44. **Harrassment/Discrimination.** He refuses.

45. **Discrimination.** She notices that after co-workers learn she is old enough to have an adult child, her training and career-enhancing opportunities are reduced.

46. Maisa is transferred to the Visalia office and to work at the Lost Hills project.

7

47. **Harassment: Whistles & Kissing Sounds.** Maisa is subjected to co-workers and contractor employees whistling at her on job sites and making "kissing" sounds behind her back as she walks by.

48. Maisa is informed and believes that numerous Caltrans and contractor workers have taken unwanted pictures of her during work hours, circulated them among themselves and made sexually suggestive comments about her, which management was aware of and failed to take all reasonable steps to prevent.

49. She does her best to ignore the inappropriate whistle and sounds.

50. Maisa tells Supervisor Garrett that she is uncomfortable working in the hostile working environment.

51. **Untrained on Preventing Sexual Harassment.** Supervisor Mr. Garrett says he does not know how to deal with the matter.

52. "California requires all agency supervisors receive sexual harassment training. Last year, however, nearly 60 percent of agencies surveyed by the State Personnel Board did not provide this training, up from 25 percent in 2016 and 32 percent in 2017." Source: https://www.capradio.org/articles/2019/05/28/its-inexcusable-dozens-of-california-government-agencies-failed-to-ensure-sexual-harassment-training-to-nearly-1800-supervisors/#data

53. Maisa has a meeting with Supervisor Gordon.

54. **Tough it out.** She says Maisa has to be "tough" and tell the workers to stop.

55. **Harassment: Unwanted Picture-taking of her.** On or about December 2018 Maisa is sexually harassed by **Vincent Torrez** who works for NV5.

56. He takes unwanted and intrusive picture(s) and video of Maisa while she is working.

57. Maisa is at the project site and inside a truck.

8

58. She is talking to a co-worker who is inside another truck.

59. **Refusal to Stop.**  Mr. Torrez walks between the trucks and tells Maisa that she is "so beautiful" and then starts taking pictures of Maisa with his cell phone while her head is outside the truck window because she is speaking with another co-worker.

60. Maisa tells him twice to *stop* taking pictures of her and she puts her hand over her face.

61. He then starts taking *video* of her.

62. Maisa *texts* Mr. Torrez and explains again that what he did was improper and made her feel uncomfortable.

63. Maisa explains the situation to Supervisor Garret and he provides her paperwork to fill out about the incident.

64. She fills a complaint form and EEO issues a report, which **substantiates** that he actions violated CalTrans' EEO policy and/or other deputy directives.

65.  In late February or early March 2019, Maisa steps in some concrete.

66. **Sexual Request.**  A contractor employee Juan Salas approaches Maisa in front of the work crew and attempts to clean the bottom of her shoes.

67. The work crew says "Oooo".

68. She stops him and is embarrassed by his actions.

69. The worker then asks what she is doing after work and she says not much.

70. *He tells her he can take her to a nice hotel on a vacation.*

71. She says no thank you and walks away.

72. Maisa reports the incident to Mike Gahli and he advises her to stay away from the worker and that he will do that area of oversight.

73. Maisa reports the incident to Mr. Amrijit Dahliwal.

9

74. He says they can arrange a meeting with the contractor because this is not ok.

75. The meeting does not place.

76. **Witness to Physical Attack.**  On or about March 2019, Defendant's Transportation Engineer, P.E., Mike Ghali, is training Maisa, when a contractor's employee, Carlos, gets upset and hits him (picture of Mr. Gahli below working on a job site), which is a violation of Penal Code section 242.

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



11

77.  Maisa reports the assault to Supervisor Garrett and asks that Carlos be removed from the site.

78.  **Retaliation.**  Supervisor Garrett tells Maisa to leave the work site.

79.  Defendant's Code of Safe Practices states:

> **2.4 Alert and Distraction-Free**
>
> Employees must not drive or report to work if their abilities are impaired by fatigue, alcohol, prescription or nonprescription drugs, illness, or other causes that might expose them or others to injury.
>
> In active work zones, employees must not use personally owned communication devices including, but not limited to, **cell phones**, Bluetooth devices, or entertainment devices. Employees may use a communication device for **business purposes** in a work zone **at a location where their safety or the safety of other workers and the traveling public will not be compromised.** (emphases added)

80.  Defendant's Flagging Instruction Handbook states:

> **Flagger Operations**
>
> The flagger should stand on the shoulder next to the traffic being controlled. A flagger may only stand in the lane being used by moving traffic after traffic has stopped. The flagger should be stationed sufficiently in advance of workers to warn them, for example, with audible warning devices such as horns or whistles, of approaching danger by out-of-control vehicles.
>
> The flagger should be clearly visible to traffic at all times and must:
>
> Stand alone at the flagger station. Do not allow other workers to congregate around the flagger station.
> Stay out of areas that are in shadows; do not blend with the background.
> **Place personal items out of the way,** so they will not distract approaching traffic or block your escape route.
> Keep the flagger station clean and organized, **eliminating distractions,** such as chairs, books, or personal radios.
> Not lean, sit, or lie on a vehicle. (emphases added)

81.  Defendant's Equal Employment Opportunity policy states in part:

> **POLICY**
>
> The California Department of Transportation (Caltrans) uses merit and excellence of qualifications as the basic principles guiding Caltrans Equal Employment

12

Opportunity (EEO) efforts regarding employee recruitment, hiring, retention, training, transfers, promotions and related public and private sector business activities.

Caltrans strives to maintain a diverse workforce and to provide EEO to all applicants, employees, clients, and customers, without regard to race, religious creed, color, national origin, ancestry, age, disability (physical or mental), medical condition (cancer and genetic characteristics), genetic information, marital status, sex (including pregnancy, childbirth, or related medical condition), gender, gender identity, gender expression, sexual orientation, political affiliation, or military and veteran status (Government Code sections 12920 and 19702 et seq.) **Caltrans has a "Zero Tolerance" policy for EEO-related discrimination and/or harassment.** (emphasis added)

It is a violation of this policy to retaliate against Caltrans employees, applicants, vendors, contractors, special service employees, or an employee of another department or agency who has supported this policy, filed a complaint, testified, or assisted in any proceeding under this policy.

82. The picture below is for illustrative purposes of what road flaggers do:



83. Defendant's flagger Mr. Jimmy Koller walks by Maisa's truck and takes a picture of her while she is trying to sleep.

84. Only or about **July 2, 2019**, Mr. Koller is supposed to be directing traffic at an intersection and holding up a stop sign in his hand.

85. Maisa is on her ***break*** waiting in a line at a McDonald's restaurant to use the bathroom (picture for illustrative purposes).



86.    Her hardhat and work vest are off.

87.    She hears brakes slam.

88.    **Harassment: Koller Taking More Unwanted Picture/Video.**  She turns her head and sees Mr. Koller has placed the stop sign between his legs and has his cell phone pointed at her indicating he is taking either pictures, video or both, of her.

89.    His flagging action violates 8 CCR 1599.

90.    Maisa is upset by the visual harassment.

91.    She demands Mr. Koller to stop taking the pictures, delete them and apologize—he refuses.

92.    Maisa calls Mr. Koller's boss, Mr. Brian Moore, and asks him to come to the job site.

93.    Maisa, Mr. Koller and Mr. Moore meet.

14

94.   Maisa asks Mr. Koller why he was taking pictures of her and he *admits* taking pictures of her.  His excuse: he is documenting that she doesn't have a hardhat on. However, while on break, the hat is not required to be on.

95.   Maisa sends a text requesting a copy of the pictures taken.

96.   Maisa tells Supervisor Garrett about Mr. Koller's violation of the road safety and sexual harassment rules.

97.   He provides her paperwork to fill out.

98.   **Retaliation: Restricted and Isolated to Office Work.**  Supervisor Garrett retaliates against Maisa by assigning her office work doing nothing essentially for two weeks.  Because Maisa was isolated in the office, there was no one out in the field to monitor traffic while construction was taking place. This was an unsafe practice.  On or about July 17, 2017 there was an major trucking accident on the roadway and there was no one for traffic control was out on the road. There was traffic backup and a sudden stoppage of traffic without traffic control management, which was unsafe.  Defendant's retaliation against Maisa took precedence over the safety of drivers out on the roadway.

From https://sweetlaw.com/one-killed-in-semi-truck-crash-on-5-freeway-near-highway-46-lost-hills-ca/

2 Semi-Trucks Involved in Deadly Crash on 5 Freeway in Lost Hills
LOST HILLS, CA (July 17, 2019) – One person was killed following a semi-truck crash on 5 Freeway, near Highway 46 early Wednesday morning.
The collision happened just after 12:00 a.m., on southbound 5 Freeway. Dispatchers arrived about a mile north of Highway 46.

99. Mr. Gahli was forced to work both day and night shifts out on the roadways, which was unsafe given his lack of sleep.

100.  She loses out on important field work training and overtime pay opportunities.

101.  **A Failure to Apply all Reasonable Means to Prevent the Harassment.**  She does not do anything else to stop the harassment.

102.  Maisa makes a complaint to Defendant's EEO unit.  No corrective action is taken that Maisa is aware of.

103.  **Discrimination & Retaliation**.  Maisa requests to work a 16-hour shift so that she can attend Saturday work-related classes called "Fundamental Engineering." She has already paid for the class.  She is denied her request by Resident Engineer Amarjit Dhaliwal and yet he grants co-worker Push Winder's request for a 16 hour shift even though he has no work-related reason for the request. Maisa asks Mr. Dhaliwal about the disparate treatment and he laughs in Maisa's face and offers no explanation.

104.  Defendant's management personnel meet with the contractors for a weekly meeting.

105.  **Retaliation through Isolation.**  Supervisor Garrett tells Maisa to stay in the office and not go to the meeting, which denies her important project information.

106.  **Picture of Maisa is Shared at All-Male Management Meeting.**  Mr. Dhaliwal tells Maisa that management and the contractors viewed Ms. Koller's picture Maisa at their meeting.

107.  He says he saw Maisa's picture on contractor project manager Pedro Santos' cell phone.

108.  Maisa asks Supervisor Garrett for a copy of the picture.

109.  Supervisor Garrett says they refused to give it to him.

110.  Mr. Ghali files a complaint to have Carlos removed from the work site for his criminal assault.

111.  Maisa *supports the complaint* and documents this in her daily report

112.  Maisa is stressed out and goes on a short vacation.

16

113.   Kathy Raja, Branch Chief for Classification & Hiring Division, emails Maisa and tells her that her salary range will increase on February 1, 2019.

114.   Carlos is suspended for two weeks.

115.   When Maisa comes back she is told that Carlos was allowed back on the work site.

116.   She tells Supervisor Garrett that the work environment is hostile.

117.   Mr. Garrett says he is going to allow Carlos on the work site.

118.   Ms. Gordon does nothing about this action.

119.   Maisa is becoming increasingly afraid because of the hostile work site.

120.   Maisa insists she be allowed to work at the field work site under safe conditions.

121.   On or about **July 3, 2019,** Maisa receives an email from Kathy Raja stating that she would be receiving a service credit for work that she did prior to being employed by Defendant and that they would be retroactively increasing her pay from February 1, 2019 to the present by switching her from employment range A to B.

122.   **Retaliation and Discrimination. Carlos Suspended//Maisa Would be Fired.** Thereafter, Maisa requests and has a meeting with Supervisors Garrett and Gordon in Supervisor Garrett's office in Bakersfield.  Maisa asks if she is physically attacked and must defend herself, would she be suspended like Carlos.  Supervisor Gordon says she would be fired.  Maisa's asks why they are putting her a dangerous work situation that may require self-defense. They have no response.

123.   **More Retaliation for Reporting Rules Violations.** A heavy equipment operator must have a **Class C** drivers license and be a qualified person to per Cal-OSHA rules.

124.   "A qualified person is a person designated by the employer, and who by reason of training, experience, or instruction has demonstrated the ability to perform safely all

17

assigned duties; and, when required, is properly licensed in accordance with federal, state, or local laws and regulations." 8 CCR § 1504

125. It is a hot day and a worker, *without* the require Class C license, choses to operate heavy equipment.

126. Maisa takes pictures of the unlawful act.

127. The workers become aware of her actions and are hostile towards her.

128. They angrily walk up to her truck and one worker has a shovel in hand.

129. They say they could lose their retirement if she reports the incident.

130. Her job requires her to report safety violations and she does so.

131. The workers are hostile towards her after that and she avoids leaving her truck.

132. Defendant violated failed to properly dispose of concrete mix.

133. Maisa took pictures of the improper work and reported it to supervisors.

134. She is retaliated against by stopping inviting to meetings and withholding necessary information she needed for the project.

135. As a result, Maisa stops leaving her truck and stays in it all day because of fear they will physically assault her like Mike Gahli had been. Maisa tells Supervisor Garrett about the incident. She tells him if they are angry again and come at her with equipment in their hands, that she will call 9-1-1. He is silent, his face turns red as if angry and walks away without saying anything.

136. Pictures of Maisa at work sites:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



19

Kurdi v. Caltrans



137. **Maisa Reports Another Safety Rule Violation.** Maisa observes another road flagger violating the rules by being on his cell phone while directing traffic.

121. He is also not at the proper location, which is a violation of 8 CCR § 1599.

122. Maisa tells the flagger to comply with the rules and do his job properly.

123. Maisa reports the misconduct.

124. She is standing next to Mr. Ghali when he gets a call from Mr. Santos, who says he is going to have her removed from the job.

125. Mr. Ghali tells him that she is just doing her job.

126. **Retaliation for Reporting Rules Violations.**

Complaint-47                                                                                              Kurdi v. Caltrans

127.  Maisa transfers to the Visalia office but stays working at the Lost Hills Project.

128.  Supervisor Garrett tells her he is removing her from the Lost Hills project.

129.  She tells him she doesn't want to be transferred to another project because she is not the wrongdoer—she is complying with the rules, doing job, reporting violations of the safety and work rules—and getting punished for it.

130.  **The Retaliation Takes a Toll: Panic Attack.**  She has her first on the job-related anxiety attack.

131.  She is crying, vomiting, shaking and is unresponsive on the floor of the bathroom.

132.  Defendant's employee Brenda Field takes her to a medical clinic.

133.  Maisa is taken home.

134.  The next morning Defendant arranges for Maisa to be transported from her home to the Visalia office.

135.  Upon arriving Maisa checks with Supervisor Garrett to see if he had reconsidered her removal from the project.

136.  He laughs and tells her she must work at the Bakersfield office with Supervisor Samuel Dahliwal.

137.  Her home is in Clovis to Bakersfield.

138.  She now has about a total four-hour commute.

139.  Below is Defendant's map of California setting forth the counties within its designated districts.

21



140. While Maisa is driving in Defendant's car she has another anxiety attack.

141. 9-1-1 is called and she is taken to the hospital.

142. A friend picks her up and takes her home.

22

Complaint-47

Kurdi v. Caltrans

143.  Around 5 p.m. she wakes up from a call from Defendant's Health and Safety department.

144.  She has a third panic attack.

145.  **Maisa Hospitalized.**  Defendant's Health and Safety unit call the police and an ambulance picks her up at her home and she hospital.

146.  **Retaliation: Loss of Pay.**  The following Monday on or about August 25, 2019, Maisa meets with Ms. Raja and she informs her Defendant has *changed its position* and will **not** be increasing her salary range as previously promised.

147.  Maisa complains about breach and Defendant eventually only agrees to a salary increase starting on April 15, 2019, which is still two and one-months later than previously promised.

148.  Amrajit Dahliwal,, Mr. Ghali and Maisa request to not work with Samuel Dahliwal, who has a reputation that people don't want to work for him.

149.  **Discrimination.**  Supervisor Garrett grants Amrajit and Mr. Ghali's requests (two male engineers) and denies Maisa's request.

150.  Nicholas Nomicos, M.D., a work comp doctor, places Maisa on disability for three months and asks the workers comp carrier to refer her for psychiatric counseling.

151.  **Retaliation: Violation of Privacy Rights and Interference with Medical Care.** Within twenty-four hours of turning in her disability leave papers, Defendant's Health and Safety Supervisor David Pierce contacts Dr. Nomicos and requests that she return to work.

152.  The doctor does a 180 and authorizes her return to work.

153.  Maisa asks the doctor why he is switching his position.

154.  The doctor says Defendant told him that they are transferring Maisa to a new and safe work location.

155.  He tells her that she must go back to work

23

156. She calls Mr. Pierce and asks where she is to report.

157. He says she has report to the Bakersfield work site.

158. Maisa tells him she doesn't want to work there because of the work environment and commute.

159. Supervisor Garrett transfers her any way.

160. Maisa has a fourth panic attack and goes to the doctor's office to let him know that Defendant is placing her in an abusive work environment.

161. Maisa goes to the Bakersfield office.

162. Maisa has a fifth panic attack.

163. Samuel Dahliwal drives Maisa from Bakersfield to the doctor's office in Fresno.

164. Maisa is diagnosed with severe anxiety and put on medical leave.

165. Maisa provides Defendant FMLA paperwork, which shows her medical provider requires a few more sessions to properly evaluate her.

166. Supervisor Gordon demands she immediately return to work.

167. Approximately March 2020 Maisa is put on rotation—for nine months she is in design in Fresno.

168. When the pandemic hits around March 2020, Defendant asks for volunteers to go work for the California Department of Public Health ("CDPH").

169. Maisa agrees to work for the CDPH to avoid having to work in Defendant's hostile environments. She starts work with the CDPH in December 2020.

170. Maisa files internally with Defendant's EEO for race, sex, age and medical disability harassment and discrimination.  No corrective action is taken.

24

171.  EEO waits about two years to say that they represent Defendant and do not represent her and she feels misled.

172.  **PTSD.**  Dr. Irma Castro writes a note on December 29, 2020, stating that Maisa is suffering from PTSD as a result of the hostile working conditions at Caltrans.

173.  She recommends that Maisa be transferred to District 12 to avoid returning to the same hostile work site.

174.  **Retaliation: Refusal to Grant Hardship Request to Transfer out of District.** While working at DPH, Maisa submits a hardship request to be transferred to another Caltrans district for health issues and the hostile work environments.

175.  Defendant has the ability to grant the request.

176.  **Defendant refuses the request.**

177.  Maisa alleges on information and belief that Defendant has a culture that creates an institutional hostile work environment through a pattern and practice of failing to comply with its own policies and laws barring discrimination, harassment and/or retaliation.

178.  As a result of Defendant's wrongful conduct, Maisa seeks general and special damages, for including, and not limited to, economic and noneconomic losses, loss of income and financial benefits, medical bills, emotional and physical harm, attorney fees and costs and/or injunctive relief.

179.  Maisa has timely complied and/or is excused from compliance pre-suit claims filing requirements for the causes of action alleged herein.

## IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (VIOLATION OF GOVERNMENT CODE § 1102.5  (RETALIATION) v. DEFENDANT)

180.  Maisa refers to and incorporates by reference the foregoing allegations.

181.  Labor Code § 1102.5 (b) & (c) provides that an employer shall not retaliate against an employee for reporting a violation of federal, state or local statute, rule or regulation or for refusing to participate in the violation of said laws, rule and/or regulations.

182.  Defendant believed Maisa had disclosed said violations to a government agency, a person with authority over Maisa, and/or an employee with authority to investigate, discover, or correct legal violations, including, and not limited to, violation of Government Code section 12940 and/or 42 USC 2000e, violation of privacy rights and/or hostile work environment.

183.  Maisa had reasonable cause to believe that the information provided to the public body disclosed violations state and/or federal statutes, rules, or regulations.

184.  Defendant engaged in adverse employment action by retaliating against her.

185.  Maisa's disclosure of information was a contributing factor in Defendant's decisions to retaliate against her.

186.  Maisa was harmed.

187.  Defendant's misconduct was a substantial factor in causing Maisa's harms and losses.

188.  Maisa was not required to exhaust any administrative remedies to bring her *Labor § 1102.5* because *Labor Code § 244(a)* provides that no such exhaustion is required under any Labor Code provision unless "that section under which the action is brought expressly requires exhaustion of an administrative remedy".

26

## SECOND CAUSE OF ACTION

## (VIOLATION OF LABOR CODE § 98.6 (RETALIATION) v. DEFENDANT)

189. Maisa refers to and incorporates by reference the foregoing allegations.

190. Labor Code § 98.6 which provides that: "no person may "discriminate, retaliate or take any adverse action against any employee because the employee…made a written or oral complaint that he or she is owed unpaid wages…or because of the exercise by the employee…on behalf of himself, herself, or others of any rights afforded him or her".

191. Defendant believed Maisa had disclosed to a government agency, a person with authority over Maisa, and/or an employee with authority to investigate, discover, or correct legal violations with respect to sexual harassment, retaliation and/or hostile work environment.

192. Maisa had reasonable cause to believe that the information disclosed violations of state and/or federal statutes, rules or regulations.

193. Maisa had reasonable cause to believe that the information provided to the public body disclosed violations of state and/or federal statutes, rules or regulations.

194. Maisa engaged in adverse employment action by retaliating against her.

195. Maisa's disclosure of information was information was a contributing factor in Defendant's decisions to subject her to retaliation.

196. Maisa was harmed.

197. Defendant's misconduct was a substantial factor in causing Maisa's harms and losses.

198. Maisa was not required to exhaust any administrative remedies to bring her Labor § 98.6 claim because Labor Code § 244(a) provides that no such exhaustion is required under any Labor Code provision unless "that section under which the action is brought expressly requires exhaustion of an administrative remedy."

27

### THIRD CAUSE OF ACTION

### (VIOLATION OF LABOR CODE SECTION 6310 (RETALIATION) MAISA V. DEFENDANT)

199.   Maisa refers to and incorporates by reference each and every foregoing allegation.

200.  In violation of Labor Code section 6310, Defendants retaliated against Maisa for reporting unsafe work conditions.

### FOURTH CAUSE OF ACTION

### (VIOLATION OF GOVERNMENT CODE § 12940  (RETALIATION v. DEFENDANT)

201.  Maisa refers to and incorporates by reference the foregoing allegations.

202.  Government Code section 12940 prohibits retaliation for reporting racial, sexual, and age harassment and/or discrimination.

203.  Defendant engaged retaliation for her reporting racial and/or sexual harassment and/or discrimination.

204.  Maisa was harmed.

205.  Defendant's misconduct was a substantial factor in causing Maisa's harms and losses.

### FIFTH CAUSE OF ACTION

### (VIOLATION OF GOVERNMENT CODE § 12940  (FAILURE TO PREVENT HARASSMENT, DISCRIMINATION AND/OR RETALIATION v. DEFENDANT)

206.   Maisa refers to and incorporates by reference the foregoing allegations.

207.  Government Code section 12940 prohibits a failure to prevent harassment, discrimination and/or retaliation for reporting racial and sexual harassment and discrimination and/or retaliation.

208.  Defendant failed to prevent racial, age and sexual harassment and/or retaliation.

209.  Maisa was harmed.

28

210. Defendant's misconduct was a substantial factor in causing Maisa's harms and losses.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF 42 U.S.C. 2000e-3a (RETALIATION) v. DEFENDANT)

211. Maisa refers to and incorporates by reference the foregoing allegations.

212. 42 U.S.C. § 2000e-3(a) prohibits actions taken in retaliation for protected activity.

213. Maisa was an employee of Defendant.

214. Defendant's employees' actions were severe enough to "dissuade a reasonable worker from making or supporting a charge of discrimination," (*Burlington Northern & Santa Fe Ry. Co. v. White* (2006) 548 U.S. 53, 57, 126 S.Ct. 2405, 2409.

215. Defendant's employees harassed Maisa after her complaint of race discrimination, and Defendant's supervisors had actual or constructive knowledge of the coworkers' retaliatory conduct and/or either participated in and encouraged the conduct, or did not act to end it, indicating the discrimination constituted an adverse employment action for which the employer may be liable under a retaliation theory.

216. Maisa has harmed by the misconduct.

217. Defendant's retaliatory actions that created a hostile and/or abusive working environment were substantial factors in causing her harms and losses.

## SEVENTH CAUSE OF ACTION

### (VIOLATION OF GOVERNMENT CODE § 12940 (RACIAL AND SEXUAL HARASSMENT AND DISCRIMINATION v. DEFENDANT)

218. Maisa refers to and incorporates by reference the foregoing allegations.

219. Government Code section 12940 prohibits racial and sexual harassment and discrimination.

220. Defendant engaged in racial and sexual harassment and discrimination.

Complaint-47                                                                 Kurdi v. Caltrans

221.  Maisa was harmed.

222.  Defendant's misconduct was a substantial factor in causing Maisa's harms and losses.

### EIGHTH CAUSE OF ACTION

**(VIOLATION OF GOVERNMENT CODE SECTION 12940  (PUBLICATION) v. DEFENDANT)**

223.  Maisa refers to and incorporates by reference the foregoing allegations.

224.  Government Code section 12940(d) states:

> (d)  For any employer or employment agency to print or circulate or cause to be printed or circulated any publication, or to make any nonjob-related inquiry of an employee or applicant, either verbal or through use of an application form, that expresses, directly or indirectly, any limitation, specification, or discrimination as to race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, or any intent to make any such limitation, specification, or discrimination. This part does not prohibit an employer or employment agency from inquiring into the age of an applicant, or from specifying age limitations, if the law compels or provides for that action.

225.  Defendant repeatedly violated the statute by printing, circulating, causing to be printed or circulated publication of pictures and/or videos taken of Maisa for reasons other than work-related, which expressed directly and indirectly, limitation, specification or discrimination based on sex.

226.  Maisa alleges on information and belief that Defendant's employees and/or contractors are continuing to publish said pictures and/or videos.

### NINTH CAUSE OF ACTION

**(VIOLATION OF GOVERNMENT CODE SECTION 12940 (TRAINING) v. DEFENDANT)**

227.  Maisa refers to and incorporates by reference the foregoing allegations.

228.  Government Code section 12940(d) states:

(c) For any person to discriminate against any person in the selection, termination, training, or other terms or treatment of that person in any apprenticeship training program, any other training program leading to employment, an unpaid internship, or another limited duration program to provide unpaid work experience for that person because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of the person discriminated against.

229. Defendant repeatedly denied Maisa proper training due to her sex, race, medical condition or reportings of wrongdoing.

## TENTH CAUSE OF ACTION

## (VIOLATION OF 42 U.S.C. 2000e-2(a)(1) (SEX DISCRIMINATION) v. DEFENDANT)

230. Maisa refers to and incorporates by reference the foregoing allegations.

231. 42 U.S.C. § 2000e-2(a)(1) prohibits sex discrimination in the work place.

232. Maisa was an employee of Defendant.

233. She was subjected to unwanted sex discrimination because she was a woman.

234. The harassing conduct was severe and/or pervasive, and to the degree that it altered the conditions of employment and created a hostile and/or abusive work environment.

235. That a reasonable woman in Maisa's circumstances would have considered the work environment to be hostile and/or abusive.

236. Maisa considered the work environment to be hostile and/or abusive.

237. Maisa alleges on information and belief that Defendant's supervisors and/or agents knew or should have known about the discrimination, and failed to take immediate and corrective action.

238. The discrimination was a substantial factor in causing Maisa's harms and losses.

31

## ELEVENTH CAUSE OF ACTION

## (VIOLATION OF 42 U.S.C. 2000e-2(a)(1) (RACE DISCRIMINATION) v. DEFENDANT)

239.   Maisa refers to and incorporates by reference the foregoing allegations.

240.   42 U.S.C. § 2000e-2(a)(1) prohibits racial discrimination in the work place.

241.   Maisa was an employee of Defendant.

242.   She was subjected to unwanted racial discrimination because she was a Muslim female.

243.   The harassing conduct was severe and/or pervasive, and to the degree that it altered the conditions of employment and created a hostile and/or abusive work environment.

244.   That a reasonable woman in Maisa's circumstances would have considered the work environment to be hostile and/or abusive.

245.   Maisa considered the work environment to be hostile and/or abusive.

246.   Maisa alleges on information and belief that Defendant's supervisors and/or agents knew or should have known about the discrimination, and failed to take immediate and corrective action.

247.   The discrimination was a substantial factor in causing Maisa's harms and losses.

## TWELFTH CAUSE OF ACTION

## (VIOLATION OF 2000e-2(a)(2) (LIMIT, SEGREGATE &/OR TRAIN) v. DEFENDANT)

248.   Maisa refers to and incorporates by reference the foregoing allegations.

249.   Defendant had a duty under 42 U.S.C section 2000e-2(a)(2) based on race or sex to not limit, segregate, or deprive Maisa's employment opportunities and/or to fail to provide her proper training.

250.   Defendant breached said by limiting her opportunities for advancement, denying training, and removing her from work sites when the perpetrators should have been removed.

32

**THIRTEENTH CAUSE OF ACTION**

**(BREACH OF MANDATORY DUTIES v. DEFENDANT)**

251. Maisa refers to and incorporates by reference the foregoing allegations.

252. Defendant had a mandatory duties as identified herein to not engage in discrimination, harassment or retaliation and to prevent their occurrence.

253. Defendant breached said duties by engaging in discrimination, harassment and/or retaliation and/or failing to prevent their occurrence.

**FOURTEENTH CAUSE OF ACTION**

**(NEGLIGENCE PER SE v. DEFENDANT)**

254. Maisa refers to and incorporates by reference the foregoing allegations.

255. Defendant had legal duties required by federal, state, and/or local rules or laws to not discriminate and/or retaliate against Maisa.

256. Defendant breached its duties as described herein.

257. Defendant's misconduct was outside the normal risks of employment that the workers' compensation exclusive remedy rule does not apply. *Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1492; and *Hart v. National Mortg. & Land Co.* (1987) 189 Cal.App. 3d 1420, 1430.

**FIFTEENTH CAUSE OF ACTION**

**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS v. DEFENDANT)**

258. Maisa refers to and incorporates by reference the foregoing allegations.

259. Defendant engaged in outrageous conduct by systemically exposing Maisa to sexual, racial and/or medical disability harassment and/or discrimination and/or retaliating against her for reporting said the wrongful conduct.

260. As a result of said wrongful conduct, Maisa sustained severe and enduring emotional distress.

## SIXTEENTH CAUSE OF ACTION

## (VIOLATION OF GOVERNMENT CODE SECTION 12940 (DISABILITY) v. DEFENDANT)

261. Maisa refers to and incorporates by reference the foregoing allegations.

262. Government Code section 12940 (a) prohibits medical disability discrimination.

263. Defendant discriminated against Maisa because of her medical disability, including, and not limited to, by refusing to transfers her to another district when her medical provider recommended it.

## SEVENTEENTH CAUSE OF ACTION

## (VIOLATION OF LABOR CODE § 204 v. DEFENDANT)

261. Maisa refers to and incorporates by reference the foregoing allegations.

262. Defendant was required to timely pay Maisa's salary pursuant to Labor Code § 204.

263. Defendant failed to timely pay her salary in violation of the labor code.

264. Maisa is entitled to interest and/or penalties for said violation pursuant to the Labor Code, including, and not limited to, §§ 204 and 210.

## EIGHTEENTH CAUSE OF ACTION

## (VIOLATION OF GOVERNMENT CODE SECTION 12940 (FAILURE TO REASONABLY ACCOMMODATE) v. DEFENDANT)

265. Maisa refers to and incorporates by reference the foregoing allegations.

266. Government Code section 12940 required Defendant to reasonably accommodate Maisa with her hostile work environment, which was causing her a medical disability.

34

267.  She requested a reasonable transfer to District 12 and Defendant unreasonably denied the request.

268.  Maisa is informed and believes that Defendant made no effort to determine if an available position was available in District 12 when it had a duty to so determine.

### NINETEENTH CAUSE OF ACTION

### (VIOLATION OF GOVERNMENT CODE SECTION 12940 (FAILURE TO ENGAGE IN GOOD FAITH INTERACTION FOR REASONABLE ACCOMMODATION) v. DEFENDANT)

269.  Maisa refers to and incorporates by reference the foregoing allegations.

270.  Government Code section 12940 required Defendant to affirmatively engage in a good faith interaction with Maisa about a reasonable accommodation for her adverse working conditions, which were causing her emotional and/or medical problems.

271.  Defendant failed and refused to engage in such an interaction despite being aware of the need to engage in the process.

### V.  PRAYER

1.  General damages;

2.  Special damages;

3.  Actual damages;

4.  Attorney fees by statute, including, and not limited to, 42 U.S.C. § 2000e- 5(k), 42 USC 1988, Govt. Code § 12965, Lab. Code §§ 98.6, 1102.5, and CCP § 1021.

5.  Any and all other applicable statutory penalties, including, and not limited to, as provided under Labor Code § 201.

6.   Civil penalties up to $10,000 for each violation of Labor Code § 1102.5 and/or Labor Code § 98.6 pursuant to Labor Code § 1102.5(d) and/or Labor Code § 1102.5(b)(3);

7.   Interest and penalties for violation of the Labor Code.

8.   Promotions;

9.   Back pay;

10. Injunctive relief, including and not limited, ordering Defendant to provide mandatory training regarding discrimination, harassment, retaliation and how to prevent them.

11. Costs of suit; and

12. Such other relief as is just and/or proper.

Respectfully submitted,

Dated: 6/12/22

**JOHN A. SHEPARDSON, ESQ. FOR PLAINTIFF MAISA KURDI**